CADILLAC AUTOMOBILE COMPANY OF BOSTON, Plaintiff, Appellee,

v.

METROPOLITAN AUTOMOBILE SALESMEN, LOCAL UNION NO. 122, Defendant, Appellant.

No. 78–1270.

United States Court of Appeals, First Circuit.

Argued Nov. 8, 1978.

Decided Dec. 14, 1978.

---

4. *See Maritime Service v. Sweet Brokerage De Puerto Rico,* 537 F.2d 560 (1st Cir. 1976).

**316**

Philip T. Tierney, Boston, Mass., with whom DiMento & Sullivan, Boston, Mass., was on brief, for defendant, appellant.

Peter H. Jacobs, Portland, Me., with whom Bennett, Kelly & Zimmerman, P. A., Portland, Me., was on brief, for plaintiff, appellee.

Before COFFIN, Chief Judge, CAMP-BELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

Defendant union struck plaintiff company, picketing for slightly over two days. Plaintiff notified its employees during the strike that they would be discharged if they persisted. They were subsequently discharged, but temporarily returned to their jobs pending arbitration. The arbitrator was to decide, inter alia, whether the strike was in violation of the no-strike clause in the contract and whether termination of employment was proper. The issue of damages owing the company, if any, was reserved to the district court. The arbitrator found the strike to be in violation of the contract but held that termination was "too severe a penalty". While recognizing that monetary damages were for the court, the arbitrator held that each employee should be restored to employment but—as "penal-

ty for a clear violation of the no-strike clause"—should "lose the equivalent of five times the amount of pay they lost during the strike". This amount, withheld from pay by the company, totalled between $24,-000 and $25,000. Subsequently the district court assessed damages against the union for the work stoppage totalling $24,778.40.

The union argues simply that since damages for breach of contract are measured by the loss, see, e. g., *Foam & Plastics Division, Tenneco Chemicals, Inc. v. General Drivers and Helpers, Local Union 401 I. B. T.*, 520 F.2d 945, 949 (3d Cir. 1975), and since the loss has substantially been recompensed as the result of the arbitrator's award, the union should not have to pay any amount which would result in the company receiving more than it lost. The union has been beguiled by what is at best a superficially plausible argument.

The withholdings from the employees, ordered by the arbitrator without appeal, were specifically distinguished from damages and imposed as a lesser penalty than termination. That is, the arbitrator denied the company its preferred remedy, discharge, and, while restoring the jobs, required payment to be made to the company. To the union's claim of "windfall" we reply that *this* money was not to compensate for work stoppage loss; it was, by the arbitrator's ruling, the deterrent or punitive equivalent of discharge. The penalties were to be imposed, even if the court were to hold that no damages had been sustained.

Indeed, to consider the withholdings from employees properly deductible from any damage award against the union would be contrary to the concept if not the literal wording of 29 U.S.C. § 185(b): "Any money judgment against a labor organization . . . shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

*The judgment is affirmed.*