George SEAR, et al., Plaintiffs, Appellants,

v.

CADILLAC AUTOMOBILE COMPANY OF BOSTON, et al., Defendants, Appellees.

No. 80–1811.

United States Court of Appeals, First Circuit.

Argued May 7, 1981.

Decided July 14, 1981.

Gail Pennington, Boston, Mass., with whom Patricia Randall and Homans, Hamilton, Dahmen & Marshall, Boston, Mass., were on brief, for appellants.

Thomas C. Cameron, Boston, Mass., with whom Philip T. Tierney and DiMento & Sullivan, Boston, Mass., were on brief, for defendant, appellee Metropolitan Automobile Salesmen, Local Union No. 122.

Lawrence C. Winger, Portland, Maine, with whom Herbert H. Bennett, Portland, Maine, was on brief, for defendant, appellee Cadillac Automobile Company of Boston.

Before COFFIN, Chief Judge, GIBSON, Senior Circuit Judge *, and BREYER, Circuit Judge.

BREYER, Circuit Judge.

Appellants in this suit raise the question of whether a union's failure to appeal from a grievance arbitration award unfavorable to some of its members breaches the duty of fair representation it owes those members. We hold that in this case it does not. On the facts alleged here, the district court, 501 F.Supp. 1350, properly granted appellees' motion for summary judgment.

Appellants are a group of auto salesmen who were discharged by their employer (the Cadillac Automobile Company of Boston) after engaging in an illegal strike. They protested the discharge and, under the contract between the employer and their union (Metropolitan Automobile Salesmen, Local No. 122) they went to arbitration. The arbitrator found that the strike was illegal but that discharge was too severe a remedy. He therefore ordered appellants to pay a fine, amounting to between two and three weeks pay for each of them. The salesmen felt that, under the contract, the arbitrator lacked the power to assess a fine. They asked their union to appeal the decision; but it did not do so. Rather, the union, in a related district court proceeding in April 1978, pursued various claims of its own.[1]

---

* Of the Eighth Circuit, sitting by designation.

1. The district court proceeding was conducted for the purpose of determining the damages, if any, suffered by the employer as a result of the strike. The union contended that the employees' fines should be set off against any damages assessed against the union. The district court rejected this argument, adopted the arbitrator's finding that the strike was illegal, and assessed compensatory damages against the union for the strike amounting to approximately $24,780.

The union appealed the district judge's ruling in this court. The employees filed a motion to intervene in the appeal, contending that the fines assessed against them were unauthorized by the collective bargaining agreement, and that the union's failure to appeal the arbitrator's award was a breach of the duty of fair representation, since the alleged motive for the union's inaction was its desire to have the deducted fines set off against the damages assessed against itself. We denied the motion to intervene, noting that the movants presented issues and claims for relief which should not be

Subsequently, the employees protested the union's failure to appeal by bringing an unfair labor practice charge before the National Labor Relations Board. The Acting Regional Director denied their claim, stating:

> The Union could reasonably have interpreted the award as merely a disciplinary action by the arbitrator in lieu of discharging the salesmen and, therefore, not as a levy against individual members in an attempt to make them liable for damages for a Union authorized breach of contract. Accordingly, absent a clearly blatant and palpably incorrect decision by the arbitrator in this case, the Union's judgment in not appealing the award was not considered so unreasonable and arbitrary as to amount to a breach of the duty of fair representation.

The employees then sued the employer for breach of contract in federal district court under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, which grants the district courts jurisdiction to hear "suits for violation of contracts between an employer and a labor organization." They also sued their union, claiming a violation of its duty to represent them fairly. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). The district court disposed of the case on motions for summary judgment. It held that even a bad faith failure to appeal a fairly conducted arbitration proceeding would not breach the union's duty of fair representation. And, without such a breach by the union, the employees could not mount a collateral attack on the unappealed award.

We note, as an initial matter, that appellants' claims may well be barred by the statute of limitations. The illegal strike took place in April 1977; the arbitration award was made on November 10, 1977; and appellants brought suit on November 28, 1978. The Supreme Court recently held in *United Parcel Service, Inc. v. Mitchell*, —— U.S. ——, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), that a suit of this type against an employer is governed by whatever state statute of limitations applies to actions to vacate arbitration awards. The relevant Massachusetts statute allows thirty days for bringing such actions. Mass.Gen.Laws Ann. ch. 150C, § 11(b). The defendant employer raised the statute of limitations as a defense. And, at oral argument, appellants conceded that the supervening *United Parcel* case, if applied here, means that their claim against the company is barred.

The *United Parcel* opinion suggests that appellants' claim against the union may also be barred, *see* at ——, 101 S.Ct. at 1563. Although the Court did not face that question directly, in the view of at least one of the Justices, the majority opinion could be taken to imply that the same statute of limitations governs an employee's action against his union for breach of the duty of fair representation. At ——, 101 S.Ct. at 1569, 1570 (Stevens, J., concurring in part and dissenting in part). In the view of another Justice, the applicable limitations period is the six-month limitation period found in § 10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b). At ——, 101 S.Ct. at 1565 (Stewart, J., concurring in the judgment). This suit was brought more than six months after the arbitration award. It was brought more than six months after the time to appeal the arbitration award expired. And, it was brought more than six months after the last union act of which appellants complain—the union's failure to attack the award at the district court proceedings in April 1978.

Nonetheless, the Supreme Court in *United Parcel* did not explicitly decide the statute of limitations issue in respect to the

---

addressed initially in our court. *Cadillac Automobile Company of Boston v. Local No. 122, Metropolitan Automobile Salesmen*, 78–1270 (1st Cir. Oct. 10, 1978). In a subsequent opinion, we affirmed the judgment of the district court assessing damages against the union, and

rejected the argument that the fines assessed against the individual salesmen should be set off against the compensatory damages. *Cadillac Auto. Co. v. Metro. Auto. Salesmen*, 588 F.2d 315, 316 (1st Cir. 1978).

union, and we have previously held that the appropriate period for such actions is that provided in the state tort statute of limitations, *de Arroyo v. Sindicato de Trabajadores Packinghouse,* 425 F.2d 281, 285–87 (1st Cir.), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970), in this case three years, Mass.Gen.Laws Ann. ch. 260, § 2A (1981 cum. supp.). Moreover, the district court did not decide on the basis of the statute of limitations. The point, while raised in the union's pleadings, was not argued on appeal. Further, there are relevant difficult subsidiary questions: for example, would appellants' filing of charges with the NLRB toll the statute? For these reasons, we will not rest our decision on this basis.

■ In any event, we believe that the district court correctly decided that no breach occurred in this instance. When a collective bargaining contract calls for final and binding grievance arbitration, as here, an arbitration decision is ordinarily final, for the employees have obtained what their union has bargained for. *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). The rule of judicial deference to such finality clauses is in part designed to encourage grievance arbitration and decentralized, informal settlement of industrial disputes. *Id.* at 596, 80 S.Ct. at 1360. The rule is important for "grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government". *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960).

There is an exception to the "finality" rule where the union does not represent the employee properly at the arbitration proceeding. Then the employee did not receive the remedy of arbitration that the contract promised him. *Vaca v. Sipes,* 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). But that exception is narrow. To take advantage of it, the employee must show a union breach of duty that "seriously undermine[d] the integrity of the arbitral process". *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. at 567, 96 S.Ct. at 1057. He must show more than a "mere error in judgment" or "occasional instances of mistake", for "grievance processes cannot be expected to be error free". *Id.* at 571, 96 S.Ct. at 1059. He must establish that the union was guilty of "malfeasance", "dishonesty", "bad faith", or "discriminatory treatment", *id.* at 568–69, 571, 96 S.Ct. at 1058, 1059, or acted in a "perfunctory" or "arbitrary" fashion, *Vaca v. Sipes,* 386 U.S. at 190, 191, 87 S.Ct. at 916. *See* Comment, *Employee Challenges to Arbitral Awards: A Model for Protecting Individual Rights Under the Collective Bargaining Agreement,* 125 U.Pa.L.Rev. 1310, 1320 (1977).

■ The burden that these terms are meant to impose upon a union member is particularly heavy if he attacks the union's failure to appeal from an admittedly fair arbitration proceeding—a proceeding untainted by any union failure to represent its members in good faith. While we need not hold, as did the district court, that a union's failure to appeal could *never* breach its representational duty, it is obvious that courts ought to allow such actions, if at all, only in unusual instances where unfairness is blatant. *See generally* Tobias, *Individual Employee Suits for Breach of the Labor Agreement and the Union's Duty of Fair Representation,* 5 Toledo L.Rev. 515, 539–40 (1974). Otherwise, the threat of suit by disappointed members will too often lead unions, against their better judgment, to appeal arbitration awards to the courts. And, the advantages of grievance arbitration—the informal, speedy, inexpensive *nonjudicial* settlement of disputes—can be eroded.

■ There is no likelihood that any such blatant unfairness on the union's part can be shown here. The award itself was not *obviously* invalid. To the contrary, the district court found that the fines that the arbitrator "assessed 'drew their essence from the contract,' particularly under Articles VI, VII and XIV(A)." The district judge believed the appellants' basic legal claim was wrong; and, without passing on

the merits of that claim, we note that this view is, at a minimum, reasonable. A contract that allows an arbitrator to order dismissal for engaging in an unlawful strike may rationally be thought to allow a fine as a less drastic punishment. Moreover, the union could reasonably have discounted the possible benefit of a successful appeal by the prospect that a second arbitrator might uphold the discharges, thus rendering the victory on appeal a pyrrhic one.

■ Nor is there any allegation of fact sufficient to show unlawful union conduct. *See* F.R.Civ.P. 56(e). Aside from the simple failure to appeal, appellants make two allegations in their complaint in support of their claim. First, they allege that the union "failed or refused to meet" with the company "regarding the amount of the fines and the method of assessment". Leaving aside the tangential relevance of this claim to the fairness of the arbitration proceeding, we do not see that any such failure to meet with the company—if it occurred—was unfair. The arbitrator's award left the computation of the fines to the company alone. Second, the appellants assert that in April 1978, one of the employees spoke to a union representative requesting that the issue of the validity of the fines be raised in district court, that the union representative indicated that the matter would be raised, but that it was not raised. This second claim, also insubstantial, concerns a comment made well after the time to appeal expired and thus could not sustain a claim of discriminatory treatment sufficient to violate the statute. In any event, we are unwilling to hold that a union breaches its duty of fair representation merely because, in the course of representing all of its members, it fails to espouse a position supported by some of the individuals who comprise its membership. *Humphrey v. Moore*, 375 U.S. 335, 349, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). In

sum, we see no disputed issue of fact such that a factual finding for appellants would show a violation of the union's duty of fair representation.[2]

*Affirmed.*

2. Appellants make a separate claim against the employer for vacation pay that they allege was wrongly withheld. They claim that grievance arbitration is "futile" as to this matter. But, they allege no facts sufficient to overcome the company's affidavits showing the absence of any reason for thinking it futile and the absence of any excuse for appellants' failure to proceed to grievance arbitration as the contract requires. The district court correctly dismissed this claim for failure to follow the grievance arbitration procedure specified in the contract.