Ronald L. **GOUKER**, Plaintiff,

v.

**MURPHY MOTOR FREIGHT, INC.**, et al., **Defendants.**

No. S86–171.

United States District Court,
N.D. Indiana,
South Bend Division.

March 22, 1988.

James B. Mitchell, Jr., Indianapolis, Ind., J. Christopher Warter, South Bend, Ind., for plaintiff.

Jerry E. Hess, St. Paul, Minn., Gregory L. Kelly, South Bend, Ind., for Murphy Motor Freight, Inc.

William Groth, Indianapolis, Ind., John D. Doran, South Bend, Ind., for Chauffeurs, Teamsters and Helpers Local Union No. 364.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This cause comes before the court on the summary judgment motion of defendant Chauffeurs, Teamsters and Helpers, Local Union No. 364 ("the union"). Plaintiff Ronald Gouker has filed his response and the union has replied; the matter is ripe for review.

Mr. Gouker brings this action pursuant to Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and Section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 158(b)(1)(A). He alleges that: (1) his employer breached the collective bargaining agreement with the union; and (2) the union breached its duty of fair representation by intentionally, arbitrarily and unjustifiably failing to represent Mr. Gouker fairly in the grievance process because, at the time of the discharge and grievance hearing, Mr. Gouker was a member of a dissident union, Teamsters for a Democratic Union ("TDU").

### I.

A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(e); *Munson v. Friske,* 754 F.2d 683 (7th Cir.1985). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donald v. Polk County,* 836 F.2d 376 (7th Cir.1988). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The parties cannot rest on mere allegations in the pleadings, *Boruski v. United States*, 803 F.2d 1421 (7th Cir.1986), or upon conclusory allegations in affidavits. *First Commodity Traders v. Heinold Commodities*, 766 F.2d 1007 (7th Cir.1985). The court must draw any permissible inferences from the materials before it in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313 (7th Cir. 1987). The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law. *Wainwright Bank & Trust Co. v. Railroadmens Federal Sav. & Loan Ass'n*, 806 F.2d 146 (7th Cir.1986).

## II.

To have a right to contest the merits of his discharge, Mr. Gouker must show that the union violated its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining union is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In the Seventh Circuit, a union breaches its duty of fair representation only if "it intentionally causes harm to an employee". *United Independent Flight Officers v. United Airlines*, 756 F.2d 1274 (7th Cir. 1985), *citing Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522 (7th Cir.1981); see also *Camacho v. Ritz–Carlton Water Tower*, 786 F.2d 242 (7th Cir.), *cert. denied* 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986); *Dober v. Roadway Express, Inc.*, 707 F.2d 292, 294 (7th Cir.1983). Under *Hoffman*, a plaintiff alleging breach of the duty bears the burden of proving deliberate or intentional misconduct on the union's part. *Hoffman v. Lonza*, 658 F.2d at 1282, *citing Superczynski v. P.T.O. Services, Inc.*, 706 F.2d 200, 202–203 (7th Cir.1983); *Graf v. Elgin, Joliet & Eastern Railway Co.*, 697 F.2d 771, 777–81 (7th Cir.1983). This duty

"is not breached, and the employee has no remedy without substantial evidence of fraud, deceitful or dishonest conduct". *Hoffman v. Lonza*, 658 F.2d at 522.

### A.

Mr. Gouker defends against the *Hoffman v. Lonza* challenge to his case with two arguments. First, he contends that the strict requirement of proof of deliberate or intentional union misconduct has not achieved uniform acceptance within this circuit, citing *Baldini v. Local Union 1095, U.A.W.*, 581 F.2d 145 (7th Cir.1978), and *Miller v. Gateway Transportation Co.*, 616 F.2d 272 (7th Cir.1980). This court cannot presume to so hold. Even the most consistent and eloquent dissenter from that standard has conceded that *"Hoffman ... is clearly the law of this circuit." Camacho v. Ritz–Carlton*, 786 F.2d at 246 (Cudahy, J., concurring).

Second, Mr. Gouker attempts to distinguish the *Hoffman* rule from this case. He notes that in *Dober v. Roadway Express, Inc.*, 707 F.2d at 294, the court circumscribed the *Hoffman* rule thus:

> There is not the slightest indication that the union acted in bad faith in prosecuting his grievance. This is not a case where the union, knowing that the worker has a possibly meritorious grievance but being unwilling to prosecute it effectively because the worker is on the outs with the union or is a member of some racial or other minority or is not a union man, refuses to prosecute the grievance at all or does so in a perfunctory manner by just going through the motions.

The *Dober* court also explained that the union must retain control over the allocation of its resources, and

> if a local union does an incompetent job of grieving, its members can vote in new officers who will do a better job or they can vote in another union. True, if the majority is oppressing a minority the electoral process will not work, but it is just at that point that the *Vaca* principle comes into play and judicial intervention is warranted.

707 F.2d at 295. A similar sentiment may be detected in *Camacho v. Ritz–Carlton Water Tower*, 786 F.2d at 244, where the court, echoing *Dober*, defined the "intentional misconduct" the plaintiff must show as sabotaging a possibly meritorious grievance because the worker was: (1) "on the outs" with the union; (2) a member of some racial or other minority; or (3) not a union man.

Mr. Gouker contends that the union breached its duty of fair representation because his TDU membership placed him "on the outs" with the union. He argues that Wayne Nellis, the union's business agent who represented him at the grievance hearing, failed to call any witnesses other than Mr. Gouker, failed to make a meaningful argument on his behalf and failed to raise the issue of what action constituted a "voluntary quit" or "abandonment of equipment". Mr. Nellis, according to Mr. Gouker, changed his attitude toward Mr. Gouker upon learning of the latter's TDU affiliation. Mr. Gouker also alleges that one of the union's representatives on the joint committee hearing the grievance was Bob Schulz, business agent who had conducted surveillance of the TDU and its members. According to the transcript from the grievance hearing, Mr. Gouker did not object to Mr. Schulz sitting on the grievance committee. Finally, Mr. Gouker alleges that the union failed to reopen the grievance machinery after the Joint Committee upheld his discharge. All of these union actions and inactions, Mr. Gouker argues, resulted from the union's hostility to him due to his TDU membership and affected the denial of his grievance.

Mr. Gouker must show more than a mere awareness by the union of his membership in the TDU. The hostility directed at TDU must be also directed at Mr. Gouker as a result of the membership. *Winter v. Local Union No. 639, etc.*, 569 F.2d 146, 150 n. 19 (D.C.Cir.1978).

■ For purposes of this summary judgment motion, the union concedes its hostile attitude towards TDU. The union argues that evidence of union hostility toward the dissident group of which Mr. Gouker was a member is not sufficient to create a triable issue. The union correctly argues that under *Hoffman*, Mr. Gouker bears the burden of presenting evidence sufficient to allow the further inference that such general political opposition evolved into individually directed hostility to Mr. Gouker, adversely affecting the manner in which the union represented him.

Mr. Gouker has made no such showing. He contends that Mr. Nellis' behavior, after learning of his TDU affiliation, warrants an inference of personal hostility. Mr. Gouker testified in his deposition to Mr. Nellis' behavior after learning of the TDU affiliation and Mr. Gouker's son's medical condition:

> He took a copy of the papers, you know, listened to both of us, and he asked about the boy, and we told him we didn't know exactly what was going to happen with him: He may have to go into the hospital, which he did.
>
> He told me he would write a grievance up. And I mentioned to him that if worse come to worse, I joked about it, I said, "Frank Elberty hounded me until I joined TDU."
>
> And after that, after I made that statement, he took these papers to get the doctor's statements—to get copies of it. I think he was gone like ten minutes. After he came back into the room, he never—he didn't sit down. He didn't look at us, kind of looked off to the side. And he made the statement that I would want to keep my health benefits paid ...

(Gouker dep., pp. 145–146). Mr. Gouker maintains that this evidence supports an inference of personal hostility based on the revelation of Mr. Gouker's TDU affiliation. Even recognizing that the court must draw all reasonable inferences in favor of Mr. Gouker as the non-moving party and that the court must carefully avoid resolution of fact issues on summary judgment, *Wilson v. Chicago, Milwaukee, St. Paul and Pacific R.R. Co.*, 841 F.2d 1347 (7th Cir.1988), the court can find no reasonable inference of personal animus in Mr. Nellis' statement or behavior. See *Matsushita Electric In-*

*dustrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

■ The remaining evidence to which Mr. Gouker points—union surveillance of TDU activity and union president Robert Warnock's pre-grievance hearing comments about the grievance of Mr. Nellis' TDU "buddy"—serve only to strengthen the inference of union opposition to the TDU. It gives rise to no inference of union hostility toward Mr. Gouker. See *Winter v. Local Union No. 639, etc.,* 569 F.2d at 150 n. 19.

Mr. Gouker has failed to come forward with evidence that the union bore him animosity due to his TDU affiliation.

### B.

■ Mr. Gouker alleges Mr. Nellis' representation was ineffective. "I, myself, feel that a business agent for a person losing his job is supposed to be in there like his lawyer." (Gouker dep., p. 168). The Seventh Circuit, however, has rejected a requirement that "workers 'grieving' on a part-time basis ... come up to some judicially devised standard of competent representation akin to that required of lawyers on pain of being found to have committed malpractice". *Dober v. Roadway Express, Inc.,* 707 F.2d at 294–295, *citing Graf v. Elgin, Joliet & E. Ry.,* 697 F.2d at 779. Mr. Nellis' failure to call witnesses or to argue "voluntary quit" or "abandonment of equipment" may amount to anything from a lackluster performance to gross negligence. A union breaches its duty to fairly represent a worker, however, only if it deliberately and unjustifiably refuses to represent that worker in processing a grievance, *Superczynski v. P.T.O. Services, Inc.,* 706 F.2d at 202, and "[i]ntentional misconduct *cannot* be inferred from negligence, whether simple or gross." *Graf v. Elgin, Joliet & E. Ry.,* 697 F.2d at 778. This allegation simply raises no triable issue. The grievance hearing transcript indicates that although Mr. Nellis may not have played an active role himself, instead deferring to Mr. Gouker to recount the events leading up to the discharge, all relevant facts were presented.

### C.

■ Mr. Gouker argues that the union representatives on the local Joint Grievance Committee ("Joint Committee"), especially Bob Schulz, were prejudiced against him because of his TDU membership and so voted with the employer representatives to uphold his discharge. According to the Joint Committee's transcript, when the chairman asked if all the facts and evidence had been presented, Mr. Gouker responded that to the best of his knowledge they had been. When asked if he felt Mr. Nellis had represented him according to the instructions Mr. Gouker gave him, Mr. Gouker again responded affirmatively, to the best of his knowledge. (Transcript of Grievance Hearing, p. 12).

■ Absent exceptional circumstances, a court will not entertain a claim of personal bias that could have been, but was not, raised at the hearing to which it applies. *Early v. Eastern Transfer,* 699 F.2d 552, 558 (1st Cir.), *cert. denied* 464 U.S. 824, 104 S.Ct. 93, 78 L.Ed.2d 100 (1983), *citing Amalgamated Meat Cutters v. Cross Brothers Meat Packers, Inc.,* 518 F.2d 1113, 1121 n. 19 (3rd Cir.1975); *Morris v. Werner–Continental, Inc.,* 466 F.2d 1185, 1189 (6th Cir.1972), *cert. denied* 411 U.S. 965, 93 S.Ct. 2144, 36 L.Ed.2d 685 (1973); *Cook Industries, Inc. v. C. Itoh & Co.,* 449 F.2d 106, 107–108 (2nd Cir.1971), *cert. denied* 405 U.S. 921, 92 S.Ct. 957, 30 L.Ed.2d 792 (1972). "When the reasons supporting an objection are known beforehand, a party may not wait to make an objection to the qualifications of a board member until after an unfavorable award has been made." *Early v. Eastern Transfer,* 699 F.2d at 558, *citing United Steelworkers of America v. Union Railroad Co.,* 648 F.2d 905, 913 (3rd Cir.1981).

Mr. Gouker believed Bob Schulz to have placed TDU members under surveillance. Mr. Gouker saw Mr. Schulz at the Joint Committee meeting and knew him to be the union representative on the Board. Nonetheless, Mr. Gouker responded affirmatively when asked by the Joint Committee chairman, "Do you feel you're receiving a

fair and impartial hearing before this board?" (Transcript of Grievance Hearing, p. 12).

As in *Early*, Mr. Gouker has pointed out no fraud so egregious that the Joint Committee's decision should be overturned because of Mr. Schulz's bias and the hearing's unfairness. Mr. Gouker has been able to provide no evidence other than suggested reasons why the union officials might be hostile to him. See *Early v. Eastern Transfer*, 699 F.2d at 558–59. Mr. Gouker has not demonstrated the existence of a triable factual dispute on this issue as required by *Celotex, Anderson,* and *Matsushita.*

#### D.

 Mr. Gouker complains that the union failed to reopen his grievance after his discharge was upheld. In the Seventh Circuit, however, a failure to process the employee's grievance properly is not enough: the plaintiff must show "substantial evidence of fraud, deceitful action or dishonest conduct". *Hoffman v. Lonza,* 658 F.2d at 522, *citing Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473 (1971); *Humphrey v. Moore,* 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964). Such an action has been labelled as one "for the union intentionally causing harm to an employee involved in a grievance proceeding." *Hoffman v. Lonza,* 658 F.2d at 522. Courts have found the showing insufficient when the plaintiff has shown no more than forgetfulness, *Hoffman v. Lonza,* 658 F.2d 519, inadequate representation, *Camacho v. Ritz-Carlton Water Tower,* 786 F.2d 242; *Dober v. Roadway Express, Inc.,* 707 F.2d 292; *Graf v. Elgin, Joliet & E. Ry.,* 697 F.2d 771, and failure to assist in the reopening of the grievance absent blatant unfairness, *Sear v. Cadillac Automobile Co. of Boston,* 654 F.2d 4, 7 (1st Cir.1981); *cf. Freeman v. Local Union No. 135, Chauffeurs, etc.,* 746 F.2d 1316 (7th Cir. 1984).

#### III.

"A union may be liable if it discriminates against employees for forbidden reasons.

It is not liable for careless or boneheaded conduct." *Camacho v. Ritz-Carlton,* 786 F.2d at 244. *Hoffman* and its progeny adopt a standard based on prohibited intent because any other approach would embroil the courts in the merits of employment decisions. *Id.* Mr. Gouker has failed to come forward with evidence of "intentional misconduct", as distinct from mere or gross negligence, sufficient to withstand a motion for directed verdict. Summary judgment for the defendant therefore is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

For the foregoing reasons, the motion for summary judgment of defendant Chauffeurs, Teamsters and Helpers, Local Union No. 364, should be, and hereby is, GRANTED.

SO ORDERED.